The 4th District Appeal Court of the State of Illinois has now convened. The Honorable Tom Terry will be presiding. Thank you. Please be seated. The first case today is case number 4-25-0147, Blessing Hospital v. Illinois Health Facilities and Services Review Board, et al. Let's proceed with appearances. First, for the appellant. Thank you. And for the appellant. Thank you. Mr. Lloyd, you may proceed with your argument. May it please the Court. In Blessing 1, the ultimate question the Court had to decide was whether Blessing's appellate administrative review challenge should be barred because it failed to timely issue summons. To answer that question, the Court first had to address the mechanisms by which the Board could start the 35-day clock. The Court held under the statute that there were two ways that the Board could start the clock. Service on QMG of its permit letter by personal service or service by mail. The case came to the Court in Blessing 1 on a 2619 motion to dismiss filed by the Board and by Blessing. Those appellees, those move-ins, the Court held had the burden of proof. They had the burden of coming forward with evidence to support their motion. And the Court held that there was no evidence in the record to support either personal or mail service. And so the Court reversed the dismissal. In doing so, the Court directed the trial court on remand to consider a couple of issues related to the summons that had been issued but which the trial court had not addressed. On remand, Blessing immediately issued new summonses, cleaned up any claim defects, and there's been no challenge by QMG substantively to those new summonses. The Board, for its part, said it was going to file the administrative record as its answer and was going to proceed to the merits. QMG then sought to raise four additional grounds related to timeliness, saying that the clock had actually started back in May of 2022. I'll address the merits of those issues, but at the threshold they're barred by Blessing 1 and by the law of the case doctrine. Blessing 1 in paragraph 53 expressly rejected electronic notice as a way of starting the clock. But all four of QMG's arguments on remand relate to electronic notice. They don't relate to mail service or personal service. Additionally, every one of those arguments was available to QMG the first time around. QMG was the movement. Blessing didn't write that motion to dismiss, edit it, select the evidence that went into it. QMG did all those selections. And all of the evidence that they tried to present to the trial court and to this court as additional grounds for accepting electronic notice were all available and could have been presented before. And this court, I've been in a lot of appeals and asked to have all of your honors. This court went through all six reasons. I've had appeals, and I'm sure you all have too, where they present six reasons. You address the two on the merits and then say, we've considered the other ones, which you have, but you don't write about them. You wrote about six different things, about standing, about admissions that we supposedly made, about forfeiture, about notices counting, about the date of the permit letter being presumptive evidence of mailing, about electronic service being sufficient, about notice alone being sufficient, and rejected all of them. Nothing would have prevented QMG from raising four additional arguments and having this court consider those the first time around. So on the merits, QMG says an acknowledgment can start the clock. An acknowledgment. It can't start the clock. QMG produced that acknowledgment two years later. Only the board can start the clock. That's right in Blessing 1. Plus, you can't acknowledge something that didn't happen. The acknowledgment says we acknowledge receipt, but when their representative was questioned under oath about that acknowledgment, it says we only received it by email. We didn't receive it by mail or by personal service. They say they were required by the board to consent to receive the permit letter electronically. They point to the permit application. Permit application says nothing of the kind. It's got a bunch of blanks to fill in, e-mail, fax numbers, and various other things, but it doesn't require consent. And by the way, the board doesn't say it requires consent. The board on remand, adhering to Blessing 1, now says that the permit letter was by certified mail. How about that? What about custom and practice? The board can't, through a custom and practice, override the statute. It can do that through rulemaking, and he put it on brief. Many other agencies, during the pandemic, decided that they wanted the option of providing notice of their decisions, to start clocks, to have finality, by means of electronic notice. And they passed regulations. But the board didn't do that. The board sent notices by e-mail, but it's his court health. That's not enough to start the clock. Finally, they say that the blessing should be somehow equitably estopped, because in the past, we got notice of favorable decisions by the board electronically. There was no benefit that blessing received by an improper means of service. So that means you can't start. Can I ask you a question? On these issues, which you're characterizing as the four additional elements to be addressed, in terms of the timeliness of the summons, your position is it not that we should not address those, because that issue is foreclosed by Blessing 1? My position is slightly different, Your Honor. My position is that you need not address those, because they're foreclosed by Blessing 1 and by the law of the case. But I am perfectly comfortable talking to you about the merits of them, and I think that they lack merit. And I would say, having studied the case law fairly extensively, I think the court has discretion about whether it wants to address the merits or not. But this seems to be a very open and shut case on those four issues, in terms of Blessing 1 and the law of the case. With respect to the posture of the case after Blessing 1, would you agree that the posture of the case was that there was a 2-6-18 motion that stood denied on the issue of timeliness of the issuance of the summons, but not yet decided on the other issues raised? That is absolutely right, because the way the case reached this court, there were three issues that the defendants raised. The summons were untimely. If they were untimely, did the good faith exception apply? And if they were either untimely, or they were untimely and the good faith exception applied, then the defendants raised other issues about the summons themselves. But you never reached the form of a summons that was either untimely and not excused. You just say you lose. And so that's what the trial court did. It said, you're untimely, and I don't think the good faith exception applies, so I don't need to look at these summonses because they're late. What this court said was, there was no proof of untimeliness. We didn't establish whether they were or were not timely. We said it could not be determined on a 6-19 motion. That's correct. You said that they fail in their burden of proving untimeliness, but you also said there were two ways to prove timeliness, by mail service or by personal service. And so because of that posture, the court didn't need to reach the good faith exception. Because there was a failure to prove untimeliness, the court didn't need to say, should we be excused for having something untimely? That then revived the issue of whether the technical claim, technical defects in the summons. So if your position is that the motion, the original motion, stands denied, and I know your position is that they can't renew the motion arguing the same issue, but that issue is still on the table like any defense raised in a denied 6-19 motion. Is that fair? I'd say not on the record it's been developed in this case, because there was a colloquy, as your Honor may recall, that we had the last time around about what could happen given that there's a 6-19 and what other evidence could be developed. But that evidence was developed on remand. So two points. The court asked the board during oral argument in Blessing I, do you have evidence? It wasn't in the record, but as an officer of the court, they had to address the court. And counsel for the board said, I've inquired, and I have no evidence that we ever served by personal service or by mail. On remand, the QMG submitted a declaration from its CFO, which supported this acknowledgment and also supported the argument that they were required to consent by filling out the permit application. So we took the deposition of the CFO. But if the door is closed to that issue on 6-19, the next time we might see it would be either at, and I don't want to be exclusive, but potentially a summary judgment motion or potentially at hearing. I think that's right, except in the posture of this case, where they elected to renew a 6-19, whether that was proper or not. I'm not sure what that even means. I'm not sure what that even means either. But courts have broad discretion to control their dockets. We litigated the case in front of the court. It's a very experienced trial judge, and so we just proceeded on that. But they didn't move for summary judgment, and they didn't move to have a trial to adjudicate any fact question. All I'm suggesting to the court is it is a bit of an unusual situation. A, you have a second 6-19. But we took the evidence, and the evidence was admissions from QMG that the two methods of service specified in Blessing I did not occur. So in that posture, I can't imagine that the court would see this issue coming up again because the board has said it's going to answer. So it's waived any issue in respect to timeliness. And QMG said we didn't get it by either of the two means that you said were appropriate. So I can't imagine that now somehow somebody is going to come back from the Himalayas and say, oh, you know what? I actually did receive it. You just didn't find it. I mean, I think if there was going to be evidence, we would have seen it. And I thought we would have seen it the first time. But they put forward a declarant, and we deposed her. And she had personal knowledge, and she was the person who was in contact with the board. And she said we didn't get it that way. We got it only electronically. So that leaves judicial estoppel as a new issue that is predicated upon a complaint that Blessing filed against his former counsel after the remand. And I would just submit to the court, this is not a situation where judicial estoppel can apply. They persuaded the trial court that judicial estoppel was somehow flexible at such a high level of generality that they could pack into it anything that they thought was appropriate for them. That's not what judicial estoppel is. The Seymour case is very clear. The trial judge in the order that they drafted didn't even articulate the five grounds, acknowledge the five grounds, but said, oh, you know, those don't really have to be met. There's general requirements. We have not found a single case in which a party hadn't succeeded. The whole point of judicial estoppel, as the Seventh Circuit, I think, cogently explained, is you can't go in and tell a court the light was red, persuade the court the light was red, recover money, and then file a different lawsuit against different defendants and say the light was green and seek to recover money because both things can't be true. Unless you lose on the first case. Unless you lose on the first one and then you could go and argue it a second time. But that's the reason, because success on a factual issue would mislead the second court. But there's been no success here at all. There's not even an inconsistent position, frankly, because they need to prove judicial estoppel by clear and convincing evidence, and they rely on inferences. But there's been no success. The practice case is still in its early stages and was when the trial court considered judicial estoppel. And, you know, we're here on appeal for this court asking for relief a second time so that after three and a half years we can try to get to the merits of this dispute because we lost the first time around, and we reversed, and we lost the second time around. So none of the practice for judicial estoppel exists. And now they admit that and they say, well, maybe it's an issue of first impression. I mean, that is misleading to this court. It's not an issue of first impression. It's an issue of settled law that they can't meet. So for all those reasons, we urge the court to reverse, and we urge the court to reverse and remand with specific directions that they answer and that we get to the merits of the case and the preliminaries be done. Thank you. All right, thank you. We don't have time in rebuttal. Argument for the appellee. Yes. Again, good morning, Your Honors. Mary Claire Bonacorsi on behalf of the appellees. May it please the Court. The circuit court's denial of Blessing's motion to strike and the circuit court's dismissal of Blessing's complaint on six separate grounds, we respectfully request this court to affirm. As a threshold matter, it's critical to address the issue of subject matter jurisdiction in addressing Blessing's appeal here, in particular Blessing's appeal of the motion to strike and the lower court's ruling denying that. Blessing has repeatedly characterized this court's ruling in Blessing 1 as finding that the clock never started, the 35-day clock never started. If that's the case, then I would submit, Your Honors, that this court would have necessarily had to have found that there would be no subject matter jurisdiction that this court had over the case, and rather than remanding it back to the lower court, would have dismissed the case in its entirety. Wouldn't it be more accurate to say that the moving party, which was relying on a period that is commenced by a certain action, did not provide evidence of when that triggering action began? So the question of when that period started, and so necessarily whether it's expired, is undetermined. That's absolutely right. Why would that affect our jurisdiction? Blessing 1 couldn't. It was a very limited record, and I would add, Your Honors, that limited record was a Blessing's making. Now in Blessing 1, I acknowledge that Blessing 1... I don't want to go down that road because it was the record that it was. It was the record the trial court had, it was the record we had, and that was the record that you went to hearing on a 619 motion. So the record is what it is, or was what it was. I understand that, Your Honor. If I may, in your brief, they argue that we somehow forfeited our right to raise these issues before the trial court in Blessing 1, and that's important to address. Can we talk about two things? Because I don't think it's a question of forfeiture, but there's a question of whether, number one, is it law of the case because we decided that the issue as raised under a 619 motion was not such that you'd be entitled to relief as a matter of law. In other words, the issue is still open. Do you just get to keep going back and say, well, let me try that again? And I think, Your Honor, it's the word again. We didn't try it in the first instance. You tried a 619 motion on that issue. That's what you're saying is the appellate court can lay out what your deficiency was and then you just go back and file another 619 motion that, in part, attempts to cure the deficiency on that issue. Yes, Your Honor. Do you think you can do that? How many times can you do that? Given the situation here, we were before the trial court, and if I may, I know, Your Honor, I don't want to raise an issue or address an issue if you don't want me to, but it's critical here to acknowledge that when blessing came before the trial court and blessing won, it took the position, it was a starting point, it took out of the field of disputed facts whether or not May 4th was the effective date of service. It effectively stipulated to that. Now, I understand this court ruled that it was not going to be a binding legal admission, but having said that, we were in a position before the trial court and blessing won where it was never put at issue, so therefore the trial court, we were under both the Giacomo v. Giacomo case we cite in our papers as well as the Cervantes case we cite in our papers. We were relieved of our obligation to adduce evidence of effective service. It was admitted. Now, this is a very unusual kind of procedural situation, so because the trial court never adjudicated whether or not service was effective, it was stipulated to. Now, I get you didn't, this court ruled that it was not going to matter. Service of the notice letter you're talking about now? Service of the permit letter, yes. Yes. That was never adjudicated before the trial court and blessing won, so therefore it couldn't be adjudicated, I say respectfully, by this court and blessing won. No, but what was adjudicated was that you filed a motion, you went to hearing on the record as it existed at that time, and after appeal you lost the motion. So do you get to keep going back to the well with the same motion on the same issue? It's not the same motion and it's not the same issue. Again, that issue was never adjudicated in blessing won before the trial court. But you asked the court to adjudicate. No, we didn't. We didn't, Your Honor. I say this respectfully. The trial court never reached the issue. We never adjudicated the issue of effective service because blessing came in and said, yeah, someone's just late. That was the starting point, and therefore the only issue was whether the good faith exception applied. So because the lower court in blessing won never reached the issue, this court couldn't reach the issue. I mean, it was beyond the scope of the appeal. So that's critically important. Now, this court did rule based on that very limited record of blessings making and was careful in issuing its decision to say that based on this limited record, there's no evidence of personal service, there's no evidence of certified mail. However, this court did go on to acknowledge that an acknowledgment would serve as sufficient evidence. And there's two sides of the equation here. I'm wondering when you're talking about service, you have the party who's doing the serving, and that's the board, and you have the party receiving the service, and that's QMG in this instance. And this court recognized there were two instances or two ways that QMG could actually adduce evidence to show it was effectively served, and that's completely, that conforts with Illinois Supreme Court rules that recognizes that a party can accept service. And the court, the receipt of service is not acceptance of service, if there's issues about the validity of it. So the question is when, when it happened, right? And that, that I think the regulation suggests has to fall from a specific date. Correct. And to say more than a year down the road we accept that service is not the same as contemporaneously saying we're in receipt of this and we accept that we have been served. Your Honor, the Lockett case speaks to that. We were not saying a year down the road that as of that date, a year down the road we acknowledged service. We accepted service on May 4th. What you received, how do you accept service, which is a communication? What's the communication to the issuer that you were accepting service? The Lockett, the court recognized that a party can acknowledge service as a form of proof that that party in fact on a date, and in that case it was two years before, accepted service. And we believe we've done that here. And that's consistent, Your Honor, with what's happened for five years in this state insofar as the CON Board has served its permit letters. It's served them exclusively by email. It's serving them exclusively by a method not called for by its own rules that it could update to allow for it. But that does not mean, Your Honor, that a party cannot accept service. How do we know who's accepting it and who's just received it? If somebody wants to challenge whether we accepted it, then we offered the acknowledgement. Likewise, Your Honor, you recognized in Blessing 1 that a party can consent to receive service by email under the Illinois Administrative Procedure Act where it's required. We've laid this out in our papers, but I think it's clear that the Board's use of the term ALL CORRESPONDENCE in all caps, a permit letter by definition is correspondence. And we conceded to receive, we consented to receive that. And the record is clear on that point. Insofar as Blessing's argument that Ms. Williamson's testimony below is somehow ambiguous, I submit, Your Honor, it's clear. She says we accepted this, we consented to it, she's the registered agent. But that's not a subjective state of mind, right? Acceptance of service is a communication saying you do not have to serve me the formal way. I will accept this. So if in a run-of-the-mill civil case, a complaint is sent to the defendant's attorney and the plaintiff then proceeds as though they're served, that's not served. If the defendant's attorney says I will accept service of this and file my appearance for the next number of days. There is a difference between just receiving it and communicating that we are accepting this in lieu of being formally served. And I don't see that here. So, Your Honor, your focus is on the contemporaneous communication that we accepted service of? I just want to make sure I understand. My focus is on saying it's not just something that you can have in your head that when you receive something that you can think to yourself, well, now I'm going to just not require them to serve me. Because it matters here. It matters here because it starts a clock on somebody not involved in that transaction. I understand that this Court acknowledged Blessing has standing to challenge whether service was effective. What I would submit, Your Honor, and it's a distinction that's very important to make, is our position is Blessing doesn't have the right to abrogate our right to accept service. Courts throughout this state, every day, someone will call the other side and say, hey, will you accept service? You can say it on the telephone, yes. Was that done? Absolutely. When we completed the application and we provided our fax number and we received it and we acted on it, and this is a nice segue into custom and practice. I just gave an example that's exactly what's not here, which is a conversation about accepting service. And what you're saying is, no, Judge, we can get it by implication by the fact that we gave them a fax number. Your Honor, we have an acknowledgment signed under oath that's consistent with the Lockett case that says as of May 4th, we accepted service. So you can say after their period runs that you've accepted service. It's silent. It's known only to you. But you can say a year after it was already too late by the time we accepted service for you to initiate your action. That's right, Your Honor. That is our position. That doesn't sound like a great rule. And that's consistent with what has gone on for five years in this state, the CON Board. Okay, but in this agency's case, but not in the case of other agencies who when they're trying to establish the rules for service, they write a rule for service. Why would you say that you can, by practice with other people, establish what others in a different case should expect service means? Because the whole point of service is to ensure that the party being served gets that which is being served upon that party. And here the party usually has the right. But you know this is a different case. This is a unique case because somebody else's rights are triggered upon that act. And it can't just be a subjective thought on your part. I think I'll accept this service. It needs to have some formality to measure it. Your Honor, in Blessing 1, this court actually used the word paradox, used the word rub, here's the rub, and recognized that Blessing didn't have the right, doesn't have the right, as of May 4th, to know if we had a phone call conversation and said, yes, we'll accept service, whether we acted upon it and ratified it, whether we consented in our application. So this whole argument of prejudice is irrelevant. This is an unusual situation where a party, yes, has standing. And in this case, they were there at the hearing. They filed their complaint. We accepted service, as over 500 other CON applicants have, including Blessing itself. All you're saying is acceptance is of a physical piece of paper or an electronic document. That means any time, by any means, is service, unless they do what? Stand up and object or burn it or mail it back? I mean, it proves too much. Your argument proves too much because any method of transmission becomes sufficient. And the statute says there are prescribed methods. Well, Your Honor, if I may, this Court in Blessing wouldn't recognize that the Administrative Procedure Act expressly allows for email service when it's required in the application and it's consented to. Here in our papers, we lay it out in detail, that the application said give the name, give the email of the person who, in this case, was our registered agent, who was entitled to receive all correspondence, which by definition is the permit letter. If you look hard enough, you'll find my email too, but I don't think the fact that you know somebody's email constitutes a formal acknowledgement that that's how you've been serving. It's not the knowing of the email, it's the Travel 100 case. If you give your email, albeit that's a case that arose in the TCPA context, but if you give your email to somebody, you're giving your consent for them to email you. So two civil litigants, because they know each other's email address, even though the code provides how someone's is to be served, two civil litigants, as long as they know the other one's email address and they've exchanged emails before, that now abrogates the need to serve them. If the statute as here says that consent needs to be given and it's a prerequisite to service and consent is given in that regard, yes, Your Honor. And consent in your construction is implied. No, it is. Because you asked for their email address and therefore they have consented to service by email. Our position is we gave our consent. We affirmatively gave our consent, which was required, and that's consistent with the Travel 100 case. Can I address the custom and practice argument, please? Why don't you talk about the judicial estoppel. Isn't fundamentally the operation depend on they've taken a position, contrary position on a factual matter in a different case and prevailed? That's correct, Your Honor. That's not what's happening here, though, right? Illinois law, both the Badani case, which is cited below, as well as the Davis case involve both questions of mixed law and fact, which is what we have here. Your Honor, I would submit in their papers, they say, well, can't we take our argument as applied, Blessing argues, would preclude them somehow from taking different positions or pleading in the alternative in the same litigation. That's not at all what we're arguing. When somebody pleads in the alternative, for example, in the same case. I get it. It's not in the same case. It's in the room. These are separate cases. So how does that work? Your Honor, here Blessing has taken diametrically opposed positions in two different cases contemporaneously. And by doing that. What's the rule against that? That's the integrity of the judicial system. Counsel, you can't rewrite Gestapo. The law is very clear. You have to have taken another position in another case and prevailed on it. And that hasn't been shown to have happened. They benefited. It's not just prevailed from a fine board perspective. And, it says and, you must prevail and benefit. Not not or. And. That means prevail is still part of the test. They haven't met the test for you to invoke Gestapo. Your Honor, as we said in our briefing, I would submit this is a really unusual situation where you have a party coming in and arguing in this case that the summonses are timely. And in another case, different parties suing their former lawyers, which is a big deal, saying that the summonses were not timely. Of course, they don't even allege the summonses were timely. They allege that their attorneys told them they had to have them issued within 35 days, and they didn't. That's not an allegation. That's of whether they were timely, which would, by the way, be a statement of law, not a fact. And that's not subject to judicial estoppel. It's a statement that that's what their attorneys said and that they didn't act according to what they told them. And they have, that's correct, Your Honor, that's their allegation that they brought that as a tort. And in order to have the tort of malpractice, there has to be an independent duty on the part of their lawyer that was breached, that caused them harm. But we're not litigating that case. And what is that duty? The duty to issue summonses within 35 days. Counsel, we're not litigating that case. You're going to tell me why that allegation is an allegation that's inconsistent with what they've alleged here. In that case, they're taking the position that the summonses were not timely. And in this case, they're taking it to court. I can't believe it says something it doesn't say. It says that their lawyers told them it had to be done within 35 days of May 4th. And then they didn't meet that deadline. That doesn't state whether that is the correct deadline. And if it did state it, it would be a legal conclusion to which judicial estoppel doesn't apply. In their complaint, Your Honor, they plead malpractice. They plead that their attorneys had an independent legal duty to issue the summons within 35 days. That's completely and diametrically at odds with the position they're taking in this case. And it threatens the integrity of the judicial system, I would submit, by having two completely different decisions by this court. All right. Thank you, Counsel. Thank you. All right. Thank you, counsel. Mr. Lloyd, will you follow argument? Thank you, Your Honor. Let me begin briefly with judicial estoppel. I think we're – I mean, we agree with the court. You need a – You don't know what I think yet. Pardon me? You don't know what I think yet. I agree with your question, Your Honor. I beg your pardon. I agree you can't make the words say what they don't say. That's – and I guess I'll begin and end there. There aren't, but there are not, fact positions that were taken in both cases that are diametrically at odds. Would you address the suggestion that by not contesting in the first go-around that the summonses were late and relying only on good faith, your opposing party had no reason to get into the question of service because you'd already conceded it was late? Yeah, I'd very much like to, Your Honor. So let's go to the motion because at the time the motion was filed, Blessing had done two things. It had filed a complaint for administrative review. Let me say a footnote. There's no issue about subject matter jurisdiction. Everybody agrees it was a final agency action. The only issue that mattered for subject matter jurisdiction was whether Blessing was challenging a final agency action. The issue is not whether it was final. The issue is when the clock started to challenge it. Okay, so that's the first thing to dispense with subject matter jurisdiction. The second thing that Blessing did was it issued summons. The next thing that happened, and I point the court here to C-120 in the record, this is QMG's motion to dismiss. That's the next thing that happened. So when they say, we made this record, we conceded, we did all of these things, this was their motion, and this is what their motion said at C-121. On May 31st, plaintiff filed a complaint. Despite filing its complaint on May 31st, plaintiff failed to have summons issued for any of the defendants until June 15th, 42 days after the permit letter issued. And then they continue. The ALR requires both the complaint be filed and summons issued within 35 days from the date the board's decision was served. That's a proposition of law that Blessing would have affirmed and we agree with. Next, on C-122, the ALR mandates that, quote, an action to review a final administrative decision shall be commenced by the filing of complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision. The court can scour that motion in all its exhibits. There is no evidence at all of service. None. They didn't put forward any evidence of service. The board joined that motion. They didn't put forward any evidence of service. And in our response, we said they had improperly framed the issue as though the date of the letter matters, what matters is service. And then in the hearing, we specifically referred to, and this comes up in detail in Blessing 1 in the section on forfeiture, we specifically challenged that service had been proper. So there was no forfeiture and the suggestion that we somehow led them astray. This was their motion. We didn't have anything to do with this motion. Yes, it is absolutely true that in their motion they said the clock started, though they didn't show how, that we couldn't invoke the good faith exception, and that even if you don't like those two arguments, we think that there are problems with your summons. They said all of those things, but they didn't offer any evidence. It was a 2-6-19 motion. And this court's finding that there was no admission and there was no forfeiture we say forecloses that argument about somehow that we led them astray or conceded. The second thing I want to say is, and this is crucial, because Ms. Bonacorsi told you that the trial court never decided the issue of timeliness and therefore it was never before you. C-252, Your Honor. This is the trial court's written decision on QMG and the board's motion to dismiss. C. Discussion. Subsection 1. Summons were not timely issued. And I quote, It is undisputed that summons were not issued for any of the defendants until June 15, 2022, 42 days after the permit letter was issued to QMG. Note, we disputed it. The 35-day statutory period began to run on the date the HFSRB, the board, sent written notification of its decision to QMG on May 4, 2022. The trial court absolutely decided that the clock started. And in Blessing 1, you absolutely decided that that was an incorrect interpretation of the statute. So that issue was absolutely before the court. And no, they don't get to keep going back again and again and again. Final thing on acknowledgement. In this 2-6-19 context, perhaps not in other contexts. Perhaps not in other contexts. And if there was a Rule 137 basis to do it, then perhaps in that context they could do it. As I suggested, it would seem hard in this context to do it. The only final thing I would say before I step down and ask Your Honors to reverse is I hope the court can keep clear the distinction between a party submitting the personal jurisdiction and the clock starting service. And acknowledgement is simply a way that a party can say, I'm okay with you suing me in court now because I've received notice. But that is not enough to start the clock. The board has to start the clock, and it has to start it by personal or mail service. I appreciate the court's attention this morning. All right. Thank you, counsel. Thank you both. The court will take the case under advisement and issue a written decision.